# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 13-CV-3185 (JFB)(GRB)

————————————

BARRY LEON, individually; ABL VENTURE CAPITAL, LLC; and OS RESEARCH, LLC,

Plaintiffs,

VERSUS

IGOR SHMUKLER, THINOMENON, INC.,  and GENNADY MEDNIKOV a/k/a GENNADY MEDUIKOV,

Defendants.

————————————

**MEMORANDUM AND ORDER**
January 17, 2014

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Barry Leon ("Leon"); ABL Venture Capital, LLC ("ABL"); and OS Research, LLC ("OS Research") (collectively, "plaintiffs") bring this action against defendants Igor Shmukler ("Shmukler"); Thinomenon, Inc. ("Thinomenon"); and Gennady Mednikov ("Mednikov") (collectively, "defendants"), under New York State contract and tort law and federal copyright law, based on defendants' alleged misappropriation and use of intellectual property, assets, and information owned by OS Research. Plaintiffs seek declaratory and injunctive relief, and damages.

Thinomenon and Mednikov presently move to dismiss the complaint. They argue that an arbitration in 2011 between Leon, ABL, OS Research, and Shmukler bars this suit under principles of *res judicata*. Mednikov separately argues that the Court lacks personal jurisdiction over him and the complaint fails to state a claim because plaintiffs proffer no allegations justifying holding Mednikov vicariously liable for Thinomenon's actions. For the following reasons, the motion is granted in part and denied in part. First, the Court denies the motion as to Thinomenon because *res judicata* does not apply. Second, the Court concludes that plaintiffs have failed, at this juncture, to make a *prima facie* showing of jurisdiction as to Mednikov. However, the Court also concludes that plaintiffs have made a sufficient threshold showing—based upon Mednikov's alleged position as President of Thinomenon and the alleged nature of the wrongful acts attributable to Thinomenon while he was President—that there is a good faith, arguable basis for personal jurisdiction that could be developed

with the benefit of limited jurisdictional discovery. Therefore, the Court, in its discretion, will allow limited jurisdictional discovery as to Mednikov's role at Thinomenon prior to any decision the personal jurisdiction issue. Accordingly, Mednikov's motion is denied without prejudice to renewal following the completion of the jurisdictional discovery.

I. BACKGROUND

A. Factual Background

The following facts are taken from the complaint and the exhibits attached thereto.[1] These are not findings of fact by the Court; rather, the Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to the non-moving parties.

Leon, a resident of New York, is the principal and controlling shareholder of ABL, a New York corporation. (Complaint ¶¶ 2–3.) OS Research, a joint venture between ABL, Shmukler, and a non-party, Shiotel Lebovic ("Lebovic"), is a New York corporation. (*Id.* ¶¶ 4–5.) ABL possesses a 71.59 percent membership and equity interest in OS Research. (*Id.* ¶ 6.) Thinomenon is an Illinois corporation based in Illinois. (*Id.* ¶ 8.) Mednikov, an Illinois resident, is Thinomenon's registered agent, president, and secretary. (*Id.* ¶¶ 9–10.)

1. OS Research and the Arbitration

Around October 2002, ABL, Shmukler, and Lebovic formed OS Research. (*Id.* ¶

---

[1] It is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records. *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

15.) ABL, Shmukler, and Lebovic were the sole members, and their business relationship was and remains governed by the "OS Research, LLC Operating Agreement" (the "Agreement"). (*Id.* ¶ 17; Agreement, Complaint Ex. 1.) Shmukler was the officer responsible for day-to-day operations, including hiring, retaining and supervising a team of contract-employee software developers, website designers, and salespeople to create, market, and sell a suite of software products. (Complaint ¶¶ 18–19.)

For ten years, OS Research developed software products and a desktop virtualization suite known as Elusiva. (*See id.* ¶¶ 28–31.) In approximately May 2011, however, Shmukler abruptly ceased all operations necessary to the normal functioning of OS Research. (*Id.* ¶ 35.) At that time, he refused to acknowledge ABL's ownership and refused to return to OS Research or to ABL any of the proprietary information and other intellectual property he possessed, such as the Elusiva software products, their underlying code, the necessary contacts for the software developers contracted by OS Research, or the contact information of Elusiva's business partners and customers. (*Id.*) Shmukler also refused to pay any percentage of the profits of OS Research to ABL, and he fled to Russia. (*Id.* ¶¶ 36–37.)

In response and pursuant to a clause in the Agreement requiring "[a]ny controversy, claim or dispute arising out of or relating to this Agreement" to be arbitrated in New York, Leon, ABL, and Letovic brought a July 2011 arbitration against Shmukler in New York. (*Id.* ¶ 38.) The moving defendants were not parties to the arbitration, which addressed two issues: the proportions of ownership ABL, Lebovic, and Shmukler held in OS Research and its assets, and whether Shmukler was entitled to control of OS Research's assets. (*Id.* ¶¶ 38,

40; Arbitration Award, Complaint Ex. 3.) The arbitrators stated that the claims arose out of Shmukler's discontinuation of OS Research's operations and refusal to recognize ABL's ownership and control of the entity. (*See* Arbitration Award, at 1.) The arbitrators did not consider claims based on the establishment or operation of any successor entity, or any claims based on other breaches of the Agreement or exploitation of the assets. (*See generally id.*) They determined that ABL owned 71.59 percent of OS Research and that Shmukler had no right to control or transfer its assets. (*Id.* at 2; Complaint ¶ 40.) Plaintiffs have been unable to serve Shmukler with the award. (Complaint ¶ 40.)

### 2.   Thinomenon and Mednikov

Plaintiffs allege that Shmukler began planning his exit from OS Research before May 2011, and he incorporated Thinomenon a month after shutting down OS Research and taking Elusiva products and other assets. (*Id.* ¶¶ 41, 48.) Documents on file with the Illinois Secretary of State identify Mednikov as Thinomenon's agent, president, and secretary, but they do not mention Shmukler. (*Id.* ¶¶ 8–9; Corporation Report, Complaint Ex. 6.) Thinomenon operates using a website at Thinomenon.com. (*Id.* ¶ 46.) It began selling the Elusiva products in its own name in mid-2011, and it continues to do so. (*Id.* ¶¶ 47–59.) Plaintiffs allege that Thinomenon's products are "mere relabelings or revisions of, and are entirely derived from, OS Research's Elusiva products and website." (*Id.* ¶ 55.) Plaintiffs further allege that they have not been compensated for the use of their property; have not received allocations, distributions, or loan repayments as required by the Agreement; and have not been informed of management decisions in accordance with the rights granted them under the Agreement. (*Id.* ¶¶ 59.)

The specific allegations (factual and legal) against Mednikov are as follows:

(1) Shmukler transferred the assets and intellectual property of OS Research to Mednikov and Thinomenon, "or, in the alternative, has used and is using Mednikov and Thinomenon as a front for his own activities." (*Id.* ¶ 62.) Thinomenon has made use of these products and is selling them under a new name. (*Id.*)

(2) Thinomenon and Mednikov, as Shmukler's "successors and assigns, have failed to make payments and distributions to ABL under the Operating Agreement" and thus have breached their contractual obligations to ABL. (*Id.* ¶¶ 77–78.)

(3) Because Thinomenon and Mednikov "are successors to Defendant Shmukler's membership and interest in OS Research," they "owe fiduciary duties to Plaintiffs." (*Id.* ¶ 101.) Defendants allegedly have violated those duties by, *inter alia*, converting OS Research assets to their own use, interfering with contractual relations, and diverting business opportunities. (*Id.* ¶ 102.)

(4) Thinomenon and Mednikov are liable for officer misconduct as transferees under N.Y. B.C.L. § 720 because they knew the wrongfulness of any transfer of OS Research assets to Thinomenon. (*Id.* ¶¶ 105–06.)

(5) Thinomenon and Mednikov discovered OS Research's trade secrets by wrongful means, because they obtained them from Shmukler with knowledge that they belonged to OS Research and/or elusiva.com, and have exploited those secrets for their own benefit and to the exclusion of plaintiffs. (*Id.* ¶ 124.)

Plaintiffs seek a declaratory judgment (1) declaring that (a) any purported transfer, sale, or assignment by Shmukler is null and void; (b) Thinomenon is an alter ego of, functional continuation of, and successor to OS Research; (c) ABL holds 71.59 percent of the membership and equity interest of Thinomenon; and (2) ordering defendants to transfer control of Thinomenon and its assets to ABL. (*Id.* ¶ 69.) Plaintiffs also bring causes of action for breach of contract, accounting, injunctive relief, breach of fiduciary duty, officer misconduct, conversion, unjust enrichment, misappropriation of trade secrets, copyright infringement, and tortious interference with prospective business opportunities.

## B. Procedural Background

Plaintiffs filed the complaint on June 4, 2013. Thinomenon and Mednikov moved to dismiss on August 15, 2013. Plaintiffs opposed on September 19, 2013. Defendants replied on October 18, 2013. The Court held oral argument on November 13, 2013.

## II. STANDARD OF REVIEW

### A. Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing the court has jurisdiction over the defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). However, prior to discovery and on a motion to dismiss that challenges the sufficiency of the factual allegations, the plaintiff need only make a *prima facie* showing of jurisdiction through its own affidavits and supporting materials to defeat the motion. *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013); *see also Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir. 1988) (quoting *Marine Midland Bank, N.A.*

*v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 85 (2d Cir. 2011). However, the Court need not "draw 'argumentative inferences' in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citations omitted).

### B. Failure to State a Claim

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556–57 (internal citation omitted)).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003).

### III.    DISCUSSION

Although Mednikov raises a jurisdictional question, the question is intertwined with the sufficiency of the complaint's allegations as to his individual liability. Therefore, the Court first considers whether the 2011 arbitration bars this lawsuit. As discussed in detail below, the Court concludes that *res judicata* does not apply and, thus, denies the motion to dismiss on that ground. The Court then addresses whether it has personal jurisdiction over Mednikov. The Court concludes that, even construing the allegations in the light most favorable to plaintiffs, plaintiffs fail to make a *prima facie* showing of personal jurisdiction. Plaintiffs' allegations that Mednikov is a successor in interest or that he is subject to long-arm jurisdiction are insufficiently developed to permit judgment as to whether personal jurisdiction is appropriate. However, notwithstanding the failure to allege sufficient facts to make a *prima facie* showing of jurisdiction, the complaint raises sufficient allegations, based upon Mednikov's position as President of Thinomenon and the nature of the alleged wrongdoing at Thinomenon, to articulate a good faith, colorable claim for jurisdiction that warrants limited discovery on this issue before the Court renders its decision. Accordingly, the Court denies the motion to dismiss as to Mednikov due to lack of personal jurisdiction, without prejudice to renewing that motion once jurisdictional discovery is complete.

### A.    Res Judicata[2]

Defendants argue that the 2011 bars the complaint under the doctrine of *res judicata.* The Court disagrees.

---

[2] A motion to dismiss on *res judicata* grounds is considered under Rule (12)(b)(6). *See Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) (explaining that *res judicata* "in no way implicates jurisdiction" and "challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)").

1.      Legal Standard

The doctrine of *res judicata*, otherwise known as claim preclusion, prevents parties from re-litigating issues in subsequent litigation that were or could have been litigated in a prior action. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. N.Y.C. Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (citation omitted). Because the prior arbitration was brought under New York law, New York's transactional analysis of *res judicata* governs. *Ippolito v. TJV Development, LLC*, 83 A.D.3d 57, 71–72 (N.Y. App. Div. 2011). The transactional analysis "bars[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). This transactional approach "'does not . . . permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action.'" *Beckford v. Citibank N.A.*, No. 00 Civ. 205, 2000 WL 1585684, at *3–4 (S.D.N.Y. Oct. 24, 2000) (quoting *Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church*, 68 N.Y.2d 456, 462 n.2 (1986)). The doctrine applies only if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Finally, "[i]n determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Id.* Therefore, as the Second Circuit has noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999). Furthermore, in evaluating the *res judicata* effect of a prior action, "courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

2.      Application

*Res judicata* does not apply in this case for two independent reasons.

First, neither the moving parties nor OS Research—which itself was the subject of the prior arbitration—were parties to the prior arbitration. Under New York and federal law, the question is whether Thinomenon's and Mednikov's interests were represented in the prior action. *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). Parties encompassed by privity include "'those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action.'" *Id.* (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970)). In this case, the incentives to litigate between Shmukler and the moving defendants are distinct. As

6

plaintiffs note, they are suing the moving defendants for their own conduct, separate and apart from Shmukler's initial misappropriation. Thus, their liability turns on different issues. There are no specific allegations that Mednikov coordinated with Shmukler in May 2011. There also is no indication that the moving parties' interests were adequately represented during arbitration. *See id.* (reasoning that privity may be found when "interests involved in the prior litigation are virtually identical to those in later litigation" and citing language that "the key seems to be that [the] interests [of the non-party] have been adequately represented by others who have litigated the matter and have lost" (citation omitted)). Therefore, despite the alleged relationship between the three defendants, the Court cannot conclude that they stand in privity with respect to the arbitration.

Second, given the date of the arbitration and the fact that the complaint alleges misconduct after the arbitration, the claims here could not have been raised during the initial arbitration. *See Beckford*, 2000 WL 1586584, at *3–4. For example, in *Giannone v. York Tape & Label, Inc.*, No. 06-6575(JFB)(AKT), 2007 WL 1521500, at *2–5 (E.D.N.Y. 2007), *aff'd* 548 F.3d 191 (2d Cir. 2008), this Court held that *res judicata* applied because the plaintiff sought an injunction and declaratory relief in the first action and then brought a second suit for damages based on the same conduct. In contrast, plaintiffs here, in part, seek damages from the movants based on the movants' misconduct *after* the arbitration and *unrelated* to the transaction that formed the basis for the arbitration. Specifically, the arbitration concerned the recovery of the OS Research assets and information from Shmukler. Nothing concerned the actual use of such assets and information by other entities or individuals, such as copyright infringement. Under the movants' theory,

plaintiffs should have anticipated every possible claim that could ever exist based on Shmukler's conduct in July 2011. However, it would be illogical and contrary to *Giannone* to conclude that the movants are insulated from any subsequent misconduct because of the arbitration. Instead, it is clear under New York law that, if the new claim could not have been previously discovered with due diligence, *res judicata* does not apply. *See, e.g.*, *Sherman v. Ansell*, 207 A.D.2d 537, 538 (N.Y. App. Div. 1994) (finding no *res judicata* or collateral estoppel bar to suit to recover damages for legal malpractice where plaintiff failed to counterclaim for such relief in earlier action brought by defendant for unpaid attorneys' fees because plaintiff could not have discovered alleged malpractice until after the suit). Although plaintiffs were aware that Shmukler took OS Research's assets and intellectual property, the arbitration was brought shortly after Shmukler left and refused to disclose information about the assets to plaintiffs. (*See* Complaint ¶ 35.) Thus, because the complaint alleges misconduct after the arbitration date, *res judicata* would not apply to those claims even assuming *arguendo* that the privity requirement was met.

Accordingly, the Court denies the motion to dismiss based on *res judicata* grounds.

### B. Personal Jurisdiction over Mednikov

Defendants also move to dismiss Mednikov for lack of personal jurisdiction. Plaintiffs argue (1) their allegations of successor liability are sufficient, without more, to give the Court personal jurisdiction over Mednikov; and (2) the Court has jurisdiction over Mednikov pursuant to N.Y. C.P.L.R. ("CPLR") 302(a)(1) and (a)(3)(ii).[3]

---

[3] The parties do not dispute whether the Court has personal jurisdiction over Thinomenon. Plaintiffs

As set forth below, the Court concludes that plaintiffs fail to make a *prima facie* showing of jurisdiction under either theory, but have made a sufficient showing to be entitled to limited jurisdictional discovery before the Court renders a decision on this issue.

1. Successor Liability-Based Jurisdiction

As a threshold matter, plaintiffs' complaint does not assert jurisdiction pursuant to a successor liability theory and Federal Rule of Civil Procedure 25(c). (*See* Complaint ¶ 13.) In any event, there is an insufficient basis at this juncture to conclude that the successor liability theory applies to Mednikov.

It is well-settled "that when a person is found to be a successor in interest" to a person over whom the court has personal jurisdiction, "the court gains personal jurisdiction over [the successor] simply as a consequence of their status as a successor in interest, without regard to whether they had any other minimum contacts with the state." *LiButti v. United States*, 178 F.3d 114, 123 (2d Cir. 1999) (citations omitted). The case law, however, almost exclusively discusses successor liability in the context of entities, not persons. *See, e.g.*, *id.* at 124–25 (discussing, in the context of Fed. R. Civ. P. 25(c), personal jurisdiction over successors-in-interest that are corporate entities);[4] *Int'l Private Satellite Partners, L.P. v. Lucky Cat*, 975 F. Supp. 483, 486 (S.D.N.Y. 1997)

("[I]n some circumstances a corporation may be held liable for breach of another corporation's contracts on a theory of successor liability.") (denying motion to dismiss where plaintiff sufficiently alleged successor was bound by a forum selection clause based on a de facto merger). Under New York law, successor liability attaches to a corporation where: "(1) there is an express or implied agreement to assume the other company's debts and obligations; (2) the transaction was fraudulent; (3) there was a de facto merger or consolidation of the companies; or (4) the purchasing company was a mere continuation of the selling company." *Am. Buying Ins. Serv. v. S. Kornreich & Sons*, 944 F. Supp. 240, 249 (S.D.N.Y. 1996) (citations omitted)); *see also Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993) (discussing Rule 25(c) transfer of interest in corporate context).[5]

_____

also state that they reserve the issue of jurisdiction under CPLR 302(a)(3)(i) because they "do not have firsthand knowledge of Mednikov's activities in New York." (Opposition, at 13 n.5.)

[4] Rule 25(c) provides: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c).

[5] In *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221 (2d Cir. 2009), the Second Circuit quoted the Fifth Circuit for the proposition that "it is is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Id.* at 224 (quoting *Patin v. Thoroughbred Power Boats*, 294 F.3d 640, 653 (5th Cir. 2002)). The discussion in both cases emphasized that the individual must be the alter ego of the original or successor entity. *See, e.g.*, *Transfield*, 571 F.3d at 224 (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.3d 131, 141–43 (2d Cir. 1991) (affirming a district court's conclusion that it possessed personal jurisdiction "if the plaintiffs . . . can prove [that] the defendants are in fact the alter ego" of the parties of a construction contract with the plaintiffs)); *Patin*, 294 F.3d at 654 ("Accordingly, we conclude that a successor corporation that is deemed to be a 'mere continuation' of its predecessor corporation can be bound by the predecessor corporation's voluntary submission to the personal jurisdiction of a court. Similarly, an individual can be bound by a

Even if the theory were applicable to the relationship between two individuals, Shmukler and Mednikov, plaintiffs fail to make a *prima facie* showing of successor liability. Plaintiffs cite the allegations in paragraphs 27, 69, 76–77, 90, and 101 of the complaint. Paragraphs 27, 76, and 90 recite the terms of the Agreement; paragraph 69 is plaintiffs' request that the Court declare Thinomenon the successor to OS Research—not a factual allegation; and paragraphs 77 and 101 allege that Mednikov is Shmukler's successor and assign because Shmukler transferred OS Research's assets and intellectual property to Thinomenon and Mednikov. In short, the facts of the alleged transfer of assets to Thinomenon and Mednikov are completely undeveloped. For example, there are no specific allegations of actions Mednikov took to assume Shmukler's obligations pursuant to the Agreement, or specific factual allegations that Shmukler transferred or assigned his interests to Mednikov. The complaint, in fact, implies that Shmukler retains significant interests in the OS Research assets and information. Therefore, the Court concludes that the bare factual allegations against Mednikov in the complaint are insufficient, without more, to establish personal jurisdiction over him pursuant to a successor liability theory.

### 2.    Long-Arm Jurisdiction

Plaintiffs also argue that Mednikov should be subject to long-arm jurisdiction

under CPLR 302(a)(1) and 302(a)(3)(ii) pursuant to his role as President of Thinomenon. (*See* Opposition, at 12–18.) As set below, plaintiffs' allegations are insufficient to make a *prima facie* showing. However, plaintiffs have made a sufficient showing to warrant limited jurisdictional discovery before this issue is decided.

### a.    Legal Standard

"In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York."[6] *Bensusian Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Id.* Thus, the district court should engage in a two-part analysis in resolving personal jurisdiction issues: (1) whether New York law would confer jurisdiction by New York courts over the defendant; and (2) whether the exercise of jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to CPLR 301,

---

corporation's voluntary submission to the personal jurisdiction of a court when the corporate veil has been pierced and the corporation is deemed to be the 'alter ego' of that individual.'"). Plaintiffs do not allege or argue, however, that Thinomenon is Mednikov's alter ego. To the extent, then, that plaintiff's theory of jurisdiction is predicated on an agency relationship between Mednikov and Thinomenon, as discussed *infra*, the Court concludes that the allegations in the complaint are insufficient.

[6] Thus, the same standard for personal jurisdiction applies to plaintiff's claim under the Copyright Act, *see, e.g., Davis v. United States*, No. 03 Civ. 1800 (NRB), 2004 WL 324880, at *5 (S.D.N.Y. Feb. 19, 2004) ("Where, as here, no applicable federal statute provides for nationwide service of process, New York law governs the question of personal jurisdiction.") (citations omitted), as well as his state law claims brought pursuant to the Court's diversity jurisdiction, *see, e.g., Nader v. Getschaw*, No. 99 Civ. 11556 (LAP), 2000 WL 1471553, at *2 (S.D.N.Y. Sept. 29, 2000) ("Personal jurisdiction in a diversity case is determined first by the law of the state in which the district court sits.") (citations omitted).

and (2) long-arm jurisdiction pursuant to CPLR 302.

To establish personal jurisdiction under CPLR 302(a)(1), two requirements must be met: (1) the defendant, either personally or through an agent, must have transacted business within the state; and (2) the claim asserted must arise from that business activity. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)). The statute allows jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invoke[d] the benefits and protections of its laws.'" *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *Parke-Bernet Galleries v. Franklyn*, 256 N.E.2d 506, 508–09 (N.Y. 1970)). Among the factors that bear on whether an out-of-state defendant transacts business in New York are: (1) whether the defendant has an on-going contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York and whether, after executing a contract with the New York entity, the defendant visited New York to conduct meetings regarding the relationship; and (3) the choice-of-law clause in any such contract. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). No one factor is dispositive; ultimately, the determination is based on the totality of the non-resident's interactions with and activities in New York. *Id.* Further, for the purposes of determining jurisdiction over an agent under CPLR 302(a), the term "agent" is broadly interpreted. *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981). In the case of a corporate officer, as here, the plaintiff "must rely on facts establishing that

the corporate officer was the driving force behind the New York transactions." *Rainbow Apparel Distrib. Ctr. Corp. v. Gaze U.S.A., Inc.*, No. 13-CV-3640, 2013 WL 5880587, at *7 (E.D.N.Y. Oct. 30, 2013) (citing *Kreutter v. McFadden Oil Co.*, 71 N.Y.S.2d 460, 470–73 (1988); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998)). "The facts must indicate personal involvement on behalf of the corporate officer in the activities giving rise to the suit." *Id.* (citing *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1149 (S.D.N.Y. 1995)).

In addition, it is well-settled that New York state long-arm jurisdiction is appropriate over a person or agent who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR 302(a)(3)(ii); *see LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).

b.   Application

A review of the complaint and the opposition demonstrates that plaintiffs' theory of personal jurisdiction hinges on Mednikov's role as President. (*E.g.*, Opposition at 6 ("[B]y virtue of his position as President of Thinomenon, the only plausible inference is that Mednikov was involved in all of this tortious activity, which is sufficient to state claims against him in his individual capacity without the necessity of piercing the corporate veil."); *id.* at 18 ("Moreover, even if Mednikov has never set foot in New York, Thinomenon's activities in New York subject him to jurisdiction here [under § 302(a)(1)] as the Company's President under principles of agency.").) As Mednikov argues, however, the complaint is devoid of any specific

factual allegations that he has acted unlawfully and is subject to personal jurisdiction.

First, there are no allegations that Mednikov is Thinomenon's alter ego. There also are no allegations that he is responsible for Thinomenon's daily management, that he has signed contracts relating to New York (or other forums), that he assisted Shmukler in absconding with any assets from OS Research, or that he has been responsible for developing Thinomenon and its products. Even if Mednikov were responsible for daily management, that fact and his officer title alone cannot suffice to impute jurisdiction under an agency theory, because in that case any corporate executive of a similar business would be subject to long-arm jurisdiction in New York so long as the corporation transacted business here. *See Rainbow Apparel*, 2013 WL 5880587, at *7 (citing *Ontel*, 899 F. Supp. at 1149). Instead, courts consistently require the officer to have personally taken part in the activities giving rise to the action at issue to justify personal jurisdiction. *See, e.g.*, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169 (2d Cir. 2010) (finding personal jurisdiction over non-resident corporate employee in trademark case where defendant was "integrally involved" in shipment of infringing merchandise into New York and benefitted from this conduct through the comingling of corporate and personal assets); *Rainbow Apparel*, 2013 WL 5880587, at *7–8 (finding personal jurisdiction over corporation's president because defendant was aware that the mark he orally licensed to defendant would be significant to defendant and its shipments to plaintiffs in New York, he benefited from the course of dealings in New York as a result, and plaintiffs' claims arose from the New York transactions); *Ontel*, 899 F. Supp. at 1149 (dismissing defendant for lack of personal jurisdiction where there was no

evidence or allegations that the defendant engaged in or directed that the corporation undertake negotiations regarding alleged infringement, communicating information about alleged infringement to the third parties, or creating a patent warning, even though he likely possessed authority to direct such activities). Therefore, the Court concludes that plaintiffs fail to make a *prima facie* showing that Mednikov was a "primary actor" in any New York transactions at issue.

Second, the balance of the allegations do not establish personal jurisdiction under CPLR 302(a)(3)(ii). Plaintiffs argue that, based on Shmukler's ties to Thinomenon and Thinomenon's actions, "[t]he only reasonable inference is that Mednikov knew or should have known (1) about Plaintiffs and their location in New York, (2) that Shmukler had started Thinomenon with Plaintiffs' assets and intellectual property in violation of the Agreement, and (3) that Thinomenon and Mednikov's tortious conduct would cause damage to Plaintiffs in New York." (Opposition, at 14.)

As explained *supra,* the general principle is that a corporate officer who commits or participates in a tort, even if it is in the course of the officer's duties on behalf of the corporation, may be held individually liable. *Bano v. Union Carbide Corp.*, 273 F.3d 120, 131 (2d Cir. 2001) (citing *Lopresti v. Terwiliger*, 126 F.3d 34, 42 (2d Cir. 1997)); *see Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) (president of corporate defendant could be held individually liable for violations of Lanham Act committed by him during course of his employment); *Polyglycoat Corp. v. C.P.C. Distribs., Inc.*, 534 F. Supp. 200, 204 (S.D.N.Y. 1982) (allegation that corporate officer personally participated in commission of violation sufficient to withstand motion to dismiss). The complaint

11

is undeveloped in describing particular actions by Mednikov that caused or furthered the harm to plaintiffs. The only specific allegations are that Mednikov and Thinomenon obtained OS Research's assets and proprietary information wrongfully, that Mednikov knew they belonged to OS Research, and that Mednikov has exploited the secrets for his own benefit. (Complaint ¶ 124.) Every other factual allegation pertains to conduct by Shmukler and Thinomenon. Plaintiffs even concede that they have "limited" knowledge of "exactly what Mednikov has done at Thinomenon during the past two years." (Opposition, at 7.)

Therefore, even construing the allegations in the complaint in the light most favorable to plaintiffs, the Court concludes that the lone allegation in ¶ 124 is insufficient to be a *prima facie* showing of personal jurisdiction under CPLR 302(a)(3)(ii), given the absence of any specific allegations as to Mednikov's precise role as President at Thinomenon and his involvement in the alleged misconduct. There is no "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

c.    Limited Jurisdictional Discovery

It is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record. *See, e.g.*, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) ("At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that SKM participated directly in a

conspiracy, the effects of which were purposefully directed at the United States. Remand will provide the opportunity for full consideration by the court of the meeting in Korea with regard to the question of personal jurisdiction."); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." (internal quotation marks omitted)); *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996) ("Although asked to review the district court's initial determination of a *prima facie* showing of *in personam* jurisdiction, we conclude that this issue is prematurely before us. . . . [S]ince the exercise of personal jurisdiction over a foreign parent corporation through a resident subsidiary is a question of law that turns on a thorough examination of the facts defining the relationship between the two corporations, we are reluctant to rely on what may turn out to be an incomplete record to clarify legal doctrine for the district court's guidance."). Obviously, a plaintiff is not entitled to such discovery in every situation, but rather only when the allegations are sufficient to articulate a colorable basis for personal jurisdiction, which could be established with further development of the factual record. In *Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201 (GEL), 2006 WL 587342 (S.D.N.Y. March 9, 2006), the court explained:

> District courts have considerable discretion in determining how to best handle jurisdictional questions, and generally may allow plaintiff to conduct limited discovery with respect to the jurisdictional issue. Such discovery has typically been authorized where the plaintiff has made a threshold showing that there is some basis for the assertion of

jurisdiction[,] facts that would support a colorable claim of jurisdiction.

*Id.* at *5 (internal quotation marks and citations omitted); *see also Viko v. World Vision, Inc.*, No. 2:08-CV-221, 2009 WL 2230919, at * (D. Vt. July 24, 2009) ("[T]he Circuit has . . . suggested that district courts may be obligated to order jurisdictional discovery based on a lesser showing [than a *prima facie* case], in particular when the plaintiff fails to allege legally sufficient facts to establish jurisdiction, but nonetheless asserts specific, non-conclusory facts that, if further developed, could demonstrate substantial state contacts." (citing *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739 (2d Cir. 2002) (unpublished opinion))); *Hollins v. United States Tennis Assoc.*, 469 F. Supp. 2d 67, 71 (E.D.N.Y. 2006) ("[T]he Second Circuit has ordered jurisdictional discovery where plaintiffs allege more than conclusory statements but without supporting facts"); *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) ("While a court should not approve a fishing expedition when little more exists than plaintiff's bare assertions that jurisdiction is proper, under New York law plaintiffs are entitled to discovery regarding the issue of personal jurisdiction if they have made a sufficient start, and shown their position not to be frivolous." (internal quotation marks omitted)).

Here, the allegations in the complaint are sufficient to warrant jurisdictional discovery. In particular, as noted above, the complaint alleges, *inter alia*, the following: Thinomenon was incorporated one month after Shmukler shut down OS Research; (2) documents on file with the Illinois Secretary of State identify Mednikov as Thinomenon's president, secretary and agent for service; and (3) Thinomenon has distributed, as its

own, software products bearing the Elusiva name while Mednikov has served as President, and continues to distribute software derived from Elusiva to the present date. Based upon these and the other allegations in the complaint, the Court concludes, in its discretion, that plaintiffs' contentions of personal jurisdiction are colorable and that they should have the opportunity to engage in limited discovery as to the jurisdictional questions. The parties shall meet-and-confer regarding the appropriate scope of discovery.

IV. CONCLUSION

For the foregoing reasons, the motion to dismiss on grounds of *res judicata* is denied. The motion to dismiss the compliant with respect to Mednikov for lack of personal jurisdiction is denied without prejudice to renewal after the completion of limited jurisdictional discovery.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 17, 2014
Central Islip, NY

***

Plaintiffs are represented by Avraham Moskowitz, M. Todd Parker, and Christopher Neff of Moskowitz & Book, LLP, 3245 Seventh Ave., 21st Floor, New York, NY 10001. Defendants are represented by Stanley Alpert of Schlam Stone & Dolan LLP, 26 Broadway, 19th Floor, New York, NY 10004.